**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
FRANK CHIN,

                     Plaintiffs,

          - against -

ABN-AMRO NORTH AMERICA, INC.,

                     Defendant.
-----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**


CV 03-3894 (DLI) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       This case arises in the context of the July 2001 sale of European American Bank ("EAB") by ABN AMRO, N.V., the parent company of Defendant ABN AMRO North America, Inc. ("ABN AMRO" or "Defendant") to Citibank, N.A. ("Citibank") and a resulting reduction in work force at ABN AMRO.  As a consequence of this sale, various work functions were consolidated, job responsibilities were transferred to other employees, short-term and long-term employee positions were eliminated and many employees were terminated.  Plaintiff was among the group of persons whose employment was terminated.    Before the Court is Defendant's Motion for Summary Judgment which has been referred to me by District Judge Dora Irizarry for a Report and Recommendation.

       Plaintiff Frank Chin ("Chin" or "Plaintiff") claims that the decision to terminate him was impermissibly based on age and race or national origin.  He has brought claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e, 42 U.S.C. § 1981 and 1981a, and pursuant to the Court's pendent jurisdiction, claims under the New York State Executive Law

§ 296 (1)(a).  For the reasons that follow, I recommend that Defendant's Motion for Summary Judgment be granted and that the Complaint be dismissed.

# I.  BACKGROUND

## A.  *Chin's Employment with ABN AMRO*

Plaintiff Frank Chin was employed by Defendant from October 1, 1997 through the effective date of his termination on September 28, 2001.  *See* Defendant's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def. Rule 56.1 Statement") at ¶¶ 4, 5, 20.[1]  ABN AMRO operates in the United States through a number of financial institutions, including La Salle Bank and Standard Federal Bank.  *Id.* at ¶ 1.  Prior to July 2001, ABN AMRO's parent company, ABN AMRO, N.V., also operated in the United States through its subsidiary, EAB.  *Id.* at ¶ 3.

Plaintiff was 49 years old when he was hired by Defendant as Help Desk Manager/Systems Officer in the Technology Infrastructure Operations Group ("TIOG") of an ABN AMRO affiliate.  *Id.* at ¶ 5.  He is of Chinese national origin.  *Id*. at ¶ 4.  In addition to his responsibilities as Help Desk Manager/Systems Officer, Plaintiff also had responsibility for purchasing computer hardware.  *Id.* at ¶ 10.  Plaintiff was hired by Ray Crescenzi, at the time, First Vice President for ABN AMRO, *id.* at ¶¶ 6, 7, and reported to Crescenzi throughout his employment.  Over the course of Chin's four-year tenure with Defendant, Crescenzi promoted Plaintiff twice, to Assistant Vice President and then Vice President, approved salary increases

---

[1]  Facts underlying this "Background" are drawn from the Defendant's Rule 56.1 Statement where such facts are not disputed.

and bonuses for him and evaluated Plaintiff in writing.  *Id.* at ¶ 8.  Plaintiff does not dispute

Crescenzi treated him fairly during the term of his employment, did not discriminate against him,

and, indeed, approved Plaintiff's hiring of two other employees of Chinese national origin.  *Id.* at

¶¶ 9, 14; Plaintiff's Rule 56.1 Counter-Statement ¶¶ 9, 14.

In or around 1999, the help desk function was transferred to another manager, and

Plaintiff continued to be responsible for desktop support and purchasing.  *Id.* at ¶ 11.  In 2000,

Plaintiff was given responsibility for business recovery.  *Id.*  Chin's client was EAB and certain

ABN AMRO business groups that did work in support of EAB.  *Id.* at ¶ 12.  Throughout much of

his tenure, eighty to ninety percent of Chin's work was for EAB.  *Id.* at ¶ 13.  By 2000, one

hundred percent of Plaintiff's work was for EAB and he had no responsibility for any other ABN

AMRO business units or entities.  *Id.*

In early 2001, there were four other TIOG vice presidents reporting to First vice president

Ray Crescenzi, in addition to Plaintiff: William Parsons, who performed functions similar to

those performed by Chin, but for ABN AMRO's clients in New York City; Lawrence

Schweitzer, who managed the Company's telecommunications operations; Glen Katz, who was

responsible for the Company's file servers; and Barry Richards, who managed client services,

help desk and print operations for EAB.  *Id.* at ¶ 15.

**B.**     ***The Sale of EAB to Citibank, N.A.***

In July 2001, EAB was sold to Citibank by ABN AMRO, N.V., resulting in a

restructuring at Defendant.  *Id.* at ¶ 16.  At that time, Plaintiff's job was to provide technical

support to EAB, the entity that was sold to Citibank.  *Id.* at ¶ 13.  As a result of the restructuring,

Crescenzi was told by his supervisor that TIOG could retain a total of three managers.  *Id.* at ¶

17.  It was Crescenzi who decided which of the five managers would be retained.  *Id.* at ¶ 18.  The three managers who were retained were Parsons, Schweitzer and Katz.  *Id*. at ¶ 22.  Each of the managers retained by ABN AMRO performed functions that were still needed by ABN AMRO.  *Id.*

All of the retained vice presidents were Caucasian.  Compl. ¶ 14.  With respect to the ages of the retained vice presidents, Glenn Katz was sixteen years younger than Plaintiff, Lawrence Schweitzer was six years younger than Plaintiff and, William Parsons was approximately two months older than Plaintiff.  *Id*.  The other terminated vice president, Barry Richards, was six years younger than Plaintiff.  *See* Def. Rule 56.1 Statement at ¶ 21.  With respect to tenure at the time of Plaintiff's termination, Plaintiff had been employed by Defendant for four years, Katz for less than one year, Schweitzer for approximately a year and a half, and Parsons for sixteen years.  *See* Compl. ¶¶ 12, 14.

**C.**    *Chin's Termination*

Plaintiff was notified in July 2001 that his termination would be effective September 2001, and while the parties do not agree on the exact date of termination, this fact is not determinative on this motion for summary judgment.  The parties dispute the basis for Plaintiff's termination, however, there are certain facts surrounding the termination that are undisputed.  First, beginning in 2000, one hundred percent of Plaintiff's work was done for EAB.  *See* Def. Rule 56.1 Statement at ¶ 13.  EAB was sold to Citibank in July 2001, around the same time as Plaintiff was terminated.  *Id*.

Second, in an e-mail attached to Plaintiff's Rule 56.1 Statement (and marked as Crescenzi

Dep. Exh. 6), Crescenzi sets out his reasons for his decision to retain Parsons and terminate

Plaintiff.  According to the e-mail,

> Bill has an excellent rapport with his clients.
> Bill has a good understanding of the NYC systems.
> Bill has strong knowledge of the NYC operations.
> Bill has put in extra effort over the past year to learn the business, systems, and provide improved service.
> Frank, while a bit more technical, does not have the same respect of his clients.
> Frank showed he is not able to handle pressure during the Network Separation phase of the transition project.  NYC is a high pressure environment.
> In the end, Bill's clients are staying and Franks clients have been sold . . .

Crescenzi Dep. Ex. 6.  Plaintiff does not dispute that while Parsons performed functions similar

to those performed by Chin, his clients were primarily ABN AMRO business groups in New

York City.  *Id.* at ¶ 23.  Parsons was familiar with the software applications used in New York

City and 90% of his time was spent working with these applications.   Putting Plaintiff in this

position would have required Plaintiff to learn the different applications.  *Id.*  Another of the

managers retained, Schweitzer, was responsible for management of Defendant's

telecommunications equipment.  Plaintiff had no experience performing these duties.  *Id.* at ¶ 27.

The parties dispute whether Plaintiff had the skill set to perform the function of the last retained

vice president, Katz.  According to Defendant, Katz was responsible for maintaining the

Company's servers and had technical skills relating to software distribution and networking.  *Id.*

at ¶ 27.  Plaintiff contends he was able to perform this function.

**D.**     ***Plaintiff's Claim of Employment Discrimination to the EEOC***

Plaintiff filed a complaint with the State Division of Human Rights within 180 days of

the alleged wrongful termination.  Compl. ¶ 2.  On May 16, 2003, the State Division of Human

Rights made a determination denying the complaint therein. *Id.* ¶ 3. Plaintiff sought review of the denial notice to the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 4. The EEOC issued a dismissal of claim and notice of right to sue on July 7, 2003. *Id.* ¶ 5. The Complaint in this action was filed within 90 days of Plaintiff's receipt of the notice of right to sue. *Id.* ¶ 6.

**E.      The Parties' Contentions**

Plaintiff challenges his termination as a senior officer in ABN AMRO's technology division during the course of ABN AMRO's reorganization following the sale of EAB. Although Plaintiff acknowledges that many employees lost their positions as a result of the reorganization, he nonetheless maintains that his discharge was discriminatory. He states that the reason given to him for his termination, namely, that his position was being eliminated as the result of the sale of EAB, is a pretext. Plaintiff challenges this stated reason for his discharged because (1) compared to the managers retained, he had a higher standard of work performance as reflected in his performance evaluations[2] and (2) Crescenzi had originally told him earlier on that he would be retained and then, at a time when he no longer had a meaningful chance to seek another position with the reorganized banks, he was informed of his termination.

Defendant argues that Plaintiff has not, and cannot, dispute the facts underlying ABN AMRO's decision to eliminate Plaintiff's position. ABN AMRO specifically points to its sale of EAB, the subsidiary which Chin supported, to Citibank. As a result of the sale, Defendant maintains, the client to whom Chin had been dedicating one hundred percent of his work efforts

---

[2]      The performance reviews are attached to the Soong Certification as Exhibits D, E, F, G and H.

(i.e., EAB) was no longer affiliated with ABN AMRO.  Moreover, Defendant emphasizes,

Chin's position was eliminated along with the positions of hundreds of other ABN AMRO

employees.  Based on these facts, Defendant argues that this case is ripe for summary judgment

on the grounds that the Plaintiff has not been able to point to a single piece of evidence to

support his claim that he was terminated because of his age, his race or his national origin.  In

essence, Defendant argues that Plaintiff's personal opinion – having admitted in testimony that

his supervisor held no discriminatory animus toward him based on any of these three factors –  is

not a substitute for evidence.

## II.  DISCUSSION

### A.  *Standard of Review*

In reviewing a motion for summary judgment, the Court is guided by the tenets set forth

in Rule 56(c) which provides as follows:

> . . . The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the moving
> party is entitled to judgment as a matter of law.  . . .

Fed. R. Civ. P. 56 (c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d

Cir. 2006); *Gray v. Lutheran Social Services of Metropolitan New York, Inc.*, No. 04-cv-2843,

2006 WL 1982859, at * 3 (E.D.N.Y. July 13, 2006).  The moving party bears the burden of

meeting this exacting standard.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In

addition, to determine whether the moving party has satisfied this burden, the Court is required to

view the evidence and all factual inferences arising from that evidence in the light most favorable

to the non-moving party.  *Id*. at 157; *Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997); *Brown v.*

*Parkchester South Condominiums, Inc.*, No. 00-cv-7235, 2006 WL 851789, at *5 (S.D.N.Y. Mar. 31, 2006).

"Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." *Byrnie v. Town of Cromwell, Bd. Of Educ*., 243 F.3d 93, 101 (2d Cir. 2001). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Second Circuit has noted, although

> [w]e are particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question[,] ... even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment.

*Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). Therefore, in order to successfully withstand a motion for summary judgment in an employment discrimination case, the evidence in the record must be admissible and sufficient to support a reasonable inference that more likely than not, unlawful discrimination was the motivation behind the adverse employment action. *James v. New York Racing Ass'n*, 233 F.3d 149, 152 (2d Cir. 2000); *Goenaga v. March of Dimes Birth Defects Found*., 51 F.2d 14, 18 (2d Cir. 1995).

**B.**     ***Chin's Age Discrimination Claim***

The ADEA*,* provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

8

29 U.S.C. § 623 (a)(1).  To establish a *prima facie* case under ADEA, a plaintiff must show (1)

that he was within the protected age group; (2) that he was qualified for the position; (3) that he

was discharged; and (4) that the discharge occurred under circumstances giving rise to an

inference of age discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);

*Slattery v. Swiss Resinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001).  The Second Circuit

has indicated a plaintiff can establish that such an inference is warranted by providing support for

the contention that his employer "treated him less favorably than a similarly situated employee

outside the protected group."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

### 1.    The *McDonnell Douglas* Burden-Shifting Analysis

Where there is an absence of direct evidence of discrimination as there is in this case, the

Supreme Court set forth a three-step burden shifting framework to analyze Title VII claims.  *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S.  at 802-05.  It has subsequently been held that the

*McDonnell Douglas* analysis established for Title VII claims of  discrimination also applies to

ADEA claims.  *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000); *James*

*v. New York Racing Ass'n*, 233 F.3d at 153-54; *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d

Cir. 1994).   The initial burden rests with the Plaintiff to establish a *prima facie* case of

discrimination.  As the Second Circuit has noted, "'[a] Plaintiff's establishment of a *prima facie*

case gives rise to a presumption of unlawful discrimination' that then 'shifts the burden of

production to the defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the

challenged employment action."  *Cross v. New York City Transit Authority*, 417 F.3d 241, 248

(2d Cir. 2005)(quoting *Woodman v. WWOR-TV, Inc.*, 411 F.2d 69, 76 (2d Cir. 2001)).

If an employer offers a justification of its action by means of admissible evidence, which, if believed by a reasonable trier of fact, would allow a finding that there is no unlawful discrimination, then "' the *McDonnell Douglas* framework – with is presumptions and burdens' - disappear[s], and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (citation omitted); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993).   At that point, the plaintiff must prove that a defendant's proffered reasons were not the true reasons for its actions but a pretext for discrimination." *Cross*, 417 F.3d at 248 (quoting *Roge v. NYP Holdings, Inc.* 257 F.3d 164, 168 (2d Cir. 2001)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 249, 252-54 (1981); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (plaintiff has the ultimate burden of proving that his age was the real reason for any adverse employment action).

## 2.  Chin's Prima Facie Case

The burden of proof that must be met to establish a prima facie case of age discrimination has been characterized by the Second Circuit as "minimal" and "de minimis." *DeLuca v. Allied Domecq Quick Service Restaurants*, No. 03-cv-5142, 2006 WL 1662611, at *7 (E.D.N.Y. June 13, 2006); *see also James v. New York Racing Ass'n*, 233 F.3d at 153-54**;** *Schnabel v. Abramson*, 232 F.3d at 87.  However, "[c]ourts in this Circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 Statement that have not been controverted by a Local Civil Rule 56.1 Statement from the nonmoving party."  *Gadsen v. Jones Lang Lasalle Americas, Inc.*, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002).  Likewise, the Court is required to disregard

allegations which are purely conclusory and devoid of concrete particulars. *Brown v. Parkchester South Condominiums, Inc.*, 2006 WL 851789, at *1 (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 2003)).

It is worth noting at the outset that in his responding Local Civil Rule 56.1 Statement aimed at countering Defendant's Rule 56.1 Statement, Plaintiff does not quarrel with 27 of the 31 "Undisputed Material Facts" set forth in that document, although in several instances, Plaintiff adds further explanatory language in his responses (e.g., numbers 12, 16, 19, 28, 30). However, Plaintiff outright disagrees with two other asserted "undisputed" facts: (1) that ABN AMRO terminated Chin's employment because Chin's clients were no longer a part of ABN AMRO (Def. Rule 56.1 Statement at ¶ 20) – which business reason Plaintiff claims is a pretext for discrimination (Pltf. Rule 56.1 Statement at ¶ 20), and (2) that two other vice presidents, Katz and Schweitzer, were retained rather than Chin since Chin did not possess the skill sets of either and could not have performed their jobs (Def. Rule 56.1 Statement at ¶ 27). Chin maintains he was capable of performing Katz's duties since he, Chin, had charge of the network group earlier on, prior to Katz's hiring (Pltf. Rule 56.1 Statement at ¶ 27). In the two remaining responses (numbers 25 and 26), Plaintiff states that he "has no evidence to disprove these statements, but submits they are subject to question because of the absence of detail."

The record demonstrates – and the parties do not dispute – that Chin has satisfied the first three elements of a *prima facie* case of age discrimination. Chin was 53 years of age at the time of his termination and thereby falls within the class protected by ADEA. In addition, Plaintiff's employment records, including his job performance evaluations, show that he was performing satisfactorily and was qualified to serve as Vice President in the TIOG. Compl. ¶ 6. Moreover,

11

Chin's termination, even though flowing from a reduction in force, qualifies as an "adverse employment action" for purposes of this analysis. *See Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004); *Woodman v. WWOR-TV,Inc.*, 411 F.3d 69. Therefore, the core of the dispute here is whether Chin has satisfied the fourth prong of the *prima facie* test in the *McDonnell Douglas* analysis.

The fourth element requires a minimal showing that the adverse employment action took place under circumstances giving rise to an inference of discrimination. *See Woodman*, 411 F.3d at 76. However, "[w]hen a plaintiff has been replaced by someone older than himself, maintaining an age discrimination claim becomes rather difficult because a fact-finder can draw no reasonable, immediate inference of discrimination." *Tarshis v. Riese Org.*, 195 F. Supp. 2d 518, 526 (S.D.N.Y. 2002). Here, it is undisputed that Crescenzi, Chin's supervisor, was told by senior management that based upon the impending sale of EAB, Crescenzi could keep only three of the existing five managers, including himself. Crescenzi Dep., Vol. II, at 66-67. Ultimately, Crescenzi took a position with Citibank, which enabled him to retain three of the five vice-presidents within TIOG. Crescenzi Dep., Vol. II, at 127-129.

Barry Richards, who is Caucasian, was the other vice-president terminated along with Chin. Richards was six years younger than Chin at the time. Glenn Katz (age 37), Lawrence Schweitzer (age 47) and William Parsons (age 53) were the three vice presidents retained. Compl. ¶ 14. Both Schweitzer and Parsons are members of the protected class for purposes of ADEA. The record demonstrates that Parsons, who is several months older than Chin, performed similar functions to Chin. Chin Dep. At 141; Crescenzi Dep., Vol. II, at 62. Parsons' clients were not affected by the sale of EAB to Citibank. Chin Dep. at 214-15. Most if not all of

Schweitzer's and Katz's client remained with ABN AMRO. Crescenzi Dep., Vol. II, at 100, 118. Upon the sale of EAB, Barry Richards' clients were affected – like Chin's clients – they would no longer be a part of ABN AMRO. Crescenzi Dep., Vol. I, at 94-95, 97-98. In view of the foregoing facts, the circumstances surrounding Plaintiff's termination do not support an inference of age discrimination.

Plaintiff, however, asserts that merely being discharged in favor of another person not within the protected class (i.e., Katz) is enough to make out a *prima facie* case of discrimination. *See Tarshis v. Riese Org.*, 211 F.3d 30, 36 (2d Cir. 2000). Therefore, Katz, who is sixteen years younger than Plaintiff, is the only remaining person against whom Plaintiff bases his claim of age discrimination. Plaintiff goes on to assert that because he was capable of performing Katz's job and had more seniority than Katz, he should have been retained and Katz dismissed. *See* Pltf. Rule 56.1 Statement, ¶ 27; Chin Dep. at 218.

However, in *Tarshis*,, the plaintiff was able to establish a *prima facie* case by showing he was replaced by a 59-year-old man who assumed his duties. *Tarshis*, 211 F.3d at 38. In the present case, Plaintiff claims to be discharged in favor of a younger employee, but then acknowledges that Katz's functions were different from the functions he performed. *See* Pltf. Rule 56.1 Statement, ¶ 15. Plaintiff had held a position which focused on client services while Katz performed a technical function, managing the company's file servers. *See* Deft. Rule 56.1 Statement, ¶ 15. Katz assumed none of the functions previously performed by Plaintiff. Plaintiff was not replaced by Katz and therefore, not discharged in favor of Katz. Even assuming Plaintiff was qualified to perform Katz's job, Defendant "was under no legal obligation to create a new job or to bump or displace" other employees in order to retain Plaintiff in a new position.

*See Laverack & Haines, Inc. v. New York State Division of Human Rights et al.*, 88 N.Y.2d 734, 740 (1996) (employer has no legal obligation to create a new or additional job or to bump or displace as a way to forestall or obviate an unlawful age discrimination complaint). In addition, Plaintiff concedes he was not qualified to perform Schweitzer's functions. Pltf. Rule 56.1 Statement, ¶ 27 Plaintiff has offered no additional evidence in support of his claim and therefore, the circumstances surrounding Plaintiff's termination with respect to Katz do not support an inference of age discrimination.

Furthermore, the fact "that younger employees were dismissed along with the plaintiff refutes rather than supports his claim of age discrimination." *Kahn v. Pepsi Cola Bottling Group*, 547 F. Supp. 736, 739 (E.D.N.Y. 1982) (granting summary judgment in favor of employer where other employees that were younger than the plaintiff were also terminated). As noted previously, Barry Richards, the other terminated vice-president, was six years younger than Plaintiff, which further militates against an inference of age discrimination.

There are other significant facts in the record which undermine any inference of age discrimination. At the time he was hired, Chin was approximately 49 years of age – already a member of the protected class. Complaint ¶¶ 10, 15; Deft.'s Rule 56.1 Statement, ¶ 5. Crescenzi had actually interviewed 4 or 5 other candidates before hiring Chin. Deft.'s Rule 56.1 Statement, ¶ 7. Crescenzi demoted a younger Caucasian employee, James Krowiak, who had failed to perform satisfactorily, and hired Chin to the management position that Krowiak had occupied. Crescenzi had Krowiak then reporting to Chin. Deft.'s Rule 56.1 Statement, ¶ 6. Chin reported directly to Crescenzi during the four years Chin worked at ABN AMRO and Crescenzi promoted Chin twice during that time period, once to Assistant Vice-President and then to Vice-President.

Deft.'s Rule 56.1 Statement, ¶ 8.  Crescenzi Certification ¶ 3.  In addition to promoting Chin, Crescenzi also approved salary increases and bonuses for Chin during his four years at ABN AMRO.  Deft.'s Rule 56.1 Statement, ¶ 8.  Chin's Dep. Tr. at 114-115.   The following exchange during Chin's deposition is significant:

> Q.    Were you satisfied with your salary at ABN AMRO?
>
> A.    Yes.
>
> Q.    Were you satisfied that Mr. Crescenzi treated you fairly with respect to your compensation?
>
> A.    Yes.    (Chin Dep. Tr. at 115)
>
> *    *    *
>
> Q.    Were you satisfied with the amount of the bonuses you received each year?
>
> A.    Yes.
>
> Q.    Do you believe that Mr. Crescenzi treated you fairly with regard to the bonuses you received each year?
>
> A.    Yes.
>
> Q.    And Mr. Crescenzi was the decision maker with regard to your bonuses, is that correct?
>
> A.    Yes.    (*Id*. at 116)

It is difficult to sustain a claim of discriminatory motivation based on age given these facts, and begs the question why Crescenzi would have promoted Chin twice, given him salary increases and bonuses over his time at ABN AMRO and treated Chin "fairly" as Chin himself concedes if Crescenzi were harboring a discriminatory bias premised on age.   The pattern of favorable

treatment here, continuing almost to the date of his termination, strongly suggests that Chin was not the victim of invidious discrimination. *See Marullo v. Ellerbe Becket, Inc*., 2001 WL 282772, at *6 (E.D.N.Y., March 16, 2001) (history of favorable treatment strongly suggests lack of invidious discrimination).

Defendant points out that Crescenzi was responsible for both hiring Chin and ultimately terminating him four years later. On that basis, Defendant argues that Plaintiff is not entitled to an inference of discrimination and in turn has not established a *prima facie* case. *See* Deft. Rule 56.1 Statement, ¶¶ 26, 27. A plaintiff's being hired and fired by the same manager is a highly relevant factor suggesting that invidious discrimination was unlikely. *See Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000); *Grady v. Affiliated Cent. Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (affirming summary judgment for the employer where the same manager hired and fired the plaintiff; discriminatory motivation would be inconsistent with the decision to hire). Although there were others in senior management presumably involved in the decision-making with regard to the reduction in force, Crescenzi clearly had significant influence in determining which vice-presidents were retained and which were terminated. In addition, Chin has not alleged any facts suggesting that he was subjected to comments or criticism at work related to his age. *See Marullo v. Ellerbe Becket, Inc*, 2001 WL 282772 at *6.

The facts here raise a strong inference that Chin was not terminated for discriminatory reasons – an inference which Chin has not overcome by the production of evidence to the contrary. *See Schnabel,* 232 F.3d at 83. The facts here stand in distinction to those set forth in *James*. There, the defendant terminated the plaintiff claiming "downsizing" as the reason for discharge. *James*, 233 F.3d at 152. A week later, however, the defendant hired a 42-year-old to

take over many of the plaintiff's former duties. *Id.* Here, however, the materials supplied by ABN AMRO, particularly the "EAB Divestiture" charts attached as Exhibit 6 to the Jennings Certification, show that there was a legitimate and substantial reduction in force as a result of the sale of EAB. Those charts further reflect an involved process undertaken by ABN AMRO to determine who would stay and who would be terminated upon the sale. Chin, moreover, has not produced any evidence claiming that someone new was hired to take over his responsibilities. Rather, his argument is that he did not agree with the selection of the vice-presidents, and Parsons in particular, who were retained instead of him.

Absent a showing of bad faith, "an employer who is sued on allegations of age discrimination is not compelled to submit the reasonableness of its employment criteria to the assessment of either judge or jury." *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). Moreover, even if Chin could show that ABN AMRO had obscured the true reason for his termination, he has not shown that the real reason has anything to do with his age. *Cuttino v. Genesis Health Ventures*, Inc., 2006 WL 62833 at * 5 (D. Conn., January 11, 2006). Taking the statements as a whole, Defendant has articulated "clear and specific" reasons for Chin's termination, supported by evidence "which, taken as true, would permit the conclusion that there was a nondiscrminatory reason for the adverse action." *Schnabel v. Abramson*, 232 F.3d at 88, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 509. Because Chin's evidence is insufficient to permit a reasonable trier of fact to find that age discrimination was the reason for his discharge from ABN AMRO, Chin has not made out a *prima facie* case. Therefore, summary judgment in the Defendant's favor is warranted. *James v. New York Racing Ass'n*, 233 F.3d at 157.

**C.** *Claim of Discrimination Based on Race or National Origin*

In the Second Cause of Action set forth in the Complaint, Plaintiff alleges that ABN AMRO discriminated against him in the terms, conditions and privileges of his employment because of his race or national origin, in violation of 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1981 and 1981(a). Section 1981 sets forth a remedy for employment discrimination that is independent of Title VII. *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60 (1975); *Ofori-Tenkorang v. American International Group, Inc.*, 460 F.3d 296, 300 (2d Cir. 2006). The Supreme Court determined in *Patterson v. McLean Credit Union*, 491 U.S. 164, 174-78 (1989) that § 1981 prohibits racial discrimination in the making and enforcement of private contracts. On a motion for summary judgment, a plaintiff's claims under 42 U.S.C. § 1981 are also subject to review pursuant to the *McDonnell Douglas* three-step, burden-shifting framework. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103 (2d Cir. 2001).

Plaintiff asserts his race or national origin discrimination claim by classifying himself as Chinese and classifying the three retained vice presidents as Caucasian. *See* Compl. ¶ 14, 15. Although Plaintiff seems to blur certain lines here, assuming for the sake of argument that the Plaintiff was discharged in favor of another not within his protected racial category or national origin category, Plaintiff would satisfy his *de minimus* burden in order to establish a *prima facie* case of race or national origin discrimination. *See Tarshis*, 211 F.3d at 36. Plaintiff has asserted that he: (1) is of a protected race or national origin; (2) was qualified for at least one remaining position;[3] (3) was terminated; and (4) was discharged while another not within his protected class

---

3       When a plaintiff seeks to overcome a summary judgment motion on the strength of a discrepancy in qualifications which the plaintiff argues the employer ignored, that "discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only

was retained. "The fourth element of the *prima facie* case may be satisfied by a showing that the plaintiff's position remained open after he was discharged, or that he was replaced by someone outside his protected class." *Id.*

Plaintiff does not have a claim based on the retention of Katz or Schweitzer because they performed different job functions than Plaintiff and Defendant had no duty to displace one of them and transfer Plaintiff in order to retain him. *See Laverack & Haines, Inc. v. NYS Division of Human Rights,* 88 N.Y.2d 734, 740 (1996). However, with respect to Parsons, whose position was similar to Plaintiff's, a *prima facie* case of race or national origin discrimination can be minimally established since Plaintiff and Parsons are of different national origin or race. *See Tarshis*, 211 F.3d at 36. Chin has made a *prima facie* showing of race or national origin discrimination by showing he was qualified for a remaining position yet terminated while a person outside of his protected class, namely, Parsons, was retained. *See Uranyi v. Multiplan, Inc.*, No. 04-CV-2685, 2006 WL 1662616, at *5 (E.D.N.Y. June 12, 2006). The establishment of a *prima facie* case creates a presumption of unlawful race or national origin discrimination. *See James*, 233 F.3d at 154.

---

conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination." *Byrnie v. Town of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). Chin's credentials on their own could not meet this weighty burden. Although the evidence shows that Chin was qualified for the retained vice-president's position that went to Parsons, the record does not establish that Parsons was unqualified or that Crescenzi was unreasonable in electing to offer the available position to Parsons based on the comparative qualifications of the two men.

It should be noted that Defendant asserts the "same actor" defense here as he did for Plaintiff's age discrimination claim. The same reasoning applies here, so there is no need for further discussion on this point.

### 1. Defendant's Reason for Chin's Discharge

In order to rebut the presumption of race or national origin discrimination, Defendant must articulate a legitimate, non-discriminatory business reason for Plaintiff's discharge. *See Woodman*, 411 F.3d at 76. ABN AMRO's reason for termination is the reduction in force at the business based upon the sale of EAB to Citibank and the legitimate reorganization of ABN AMRO's business. Plaintiff was advised by letter dated July 31, 2001 from Raul G. Cruz, Senior Vice President of Human Resources Administration of the Bank that he was being terminated after the sale of EAB and that his last date of employment was estimated to be September 28, 2001. Compl. ¶ 13.

Defendant adds that due to the sale of EAB, Plaintiff's clients would no longer be serviced by ABN AMRO, resulting in the elimination of Plaintiff's position. Reorganization resulting in a loss of jobs is recognized as a legitimate business reason for termination. *See Tarshis*, 195 F. Supp. 2d at 525; *Cianfrano v. Babbitt*, 851 F. Supp. 41, 47-48 (N.D.N.Y. 1994) (accepting a reduction in workforce as a legitimate reason for dismissal). The articulation of the legitimate, non-discriminatory reason causes the presumption created by the *prima facie* case to drop out and the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reason is a pretext for discrimination. *See Abdu-Brisson v. DeHa Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

## 2. <u>Plaintiff's Evidence on Pretext</u>

Plaintiff must come forth with evidence that the reason articulated by Defendant is not the true reason for the termination, "and that the actual motivations more likely than not were discriminatory." *Id.* at 469. Plaintiff may introduce new evidence or rely on the evidence used to establish his *prima facie* case. *See Uranyi*, 2006 WL 1662616, at *5. The evidence set forth in establishing a *prima facie* case combined with proof that the employer's proffered reason is false may be enough to allow a reasonable inference of discrimination to be drawn. *See Reeves*, 530 U.S. at 148.

"It is not sufficient, however, for a plaintiff merely to show that she satisfies 'McDonnell Douglas's minimal requirements of a *prima facie* case' and to put forward 'evidence from which a factfinder could find that the employer's explanation . . . was false.'" *Uranyi*, 2006 WL 1662616, at *5 (quoting *James*, 233 F.3d at 157). The evidence must be "sufficient to support a reasonable inference that prohibited discrimination occurred." *James*, 233 F.3d at 156.

Plaintiff asserts Defendant's reason is pretext for unlawful discrimination because it is different from the explanation originally offered to him at the time Crescenzi discussed the reduction in force with him. *See* Plaintiff's Memorandum of Law In Opposition To Motion For Summary Judgment ("Pl. Mem. Opp."), ¶ 13. According to the Plaintiff, in June of 2001, Crescenzi had told him that due to the restructuring, positions were being eliminated, that he would be retained and that Parsons would be terminated. *See* Pl. Memo Opp. ¶ 13. However, towards the end of July 2001, Plaintiff was notified of *his* termination and Parsons' retention.

ABN AMRO has asserted, and Crescenzi has testified, that the two managers who were terminated were let go based upon the fact that their functions had been entirely in support of

EAB and their duties would cease upon the sale. Crescenzi decided to retain managers who would still have clients at ABN AMRO following the sale of EAB. Def. Rule 56.1 Statement at ¶ 19. Nonetheless, Plaintiff claims the reason given by Defendant is pretextual because if it were true, Plaintiff would have been terminated in June since Defendant knew at that time that Plaintiff's position was being eliminated. Plaintiff asserts that unlawful discrimination can be the only explanation for his manager's change in position and decision to terminate him and retain Parsons. No additional evidence in support of an inference of discrimination has been offered by Plaintiff. In fact, Plaintiff does not cite a single case to support the position he has taken.

On the other hand, in addition to the foregoing reasons, Defendant has produced evidence that Parsons worked out of the Manhattan office of ABN AMRO. His clients were primarily ABN AMRO business groups located in Manhattan. Chin Dep. at 141-142. Crescenzi Dep., Vol. II at 61-62; Crescenzi Cert., ¶ 7. Parsons was familiar with the software applications in New York City. Approximately 90% of Parsons' time was spent working with these software applications, which were not standard applications used by the rest of the business. In 2000, after the transfer of the Lasalle Business Credit work and EMI work, Chin's work was limited to EAB work being done on Long Island. Chin Dep. at 149.

In addition, Chin testified that he did not believe that Crescenzi was biased against people of Chinese national original. Chin Dep. at 195. Perhaps most revealing, Chin testified to the following at his deposition:

> Q. Are you aware of any fact which causes you to believe that you were terminated by ABN-AMRO as a result of your national origin?

A.  Given the facts, given the facts that I felt that my performance reviews and my relationship with Ray [Crescenzi] was above standard. And given the fact that I felt that, out of all of Ray's direct reports, I was the best performer, always supported him, got along well with him, I have no other course to believe.

Then, why are you picking – I mean, you have Larry Schweitzer and Glen Katz, who are with the company for a year or less than a year. Okay, you have Ray telling me that I'm taking over and Bill Parsons is leaving, okay.

Then, all of a sudden out of the blue, everything changes. And what I am I [sic] going to believe. There's nothing else left for me to believe. Something happened.

Chin Dep. at 196-197. Chin is unable to point to anything more than a conclusory allegation that his termination had to have been based on race or national origin discrimination – a sad conclusion, but nonethless one devoid of supporting evidence.

Juxtaposed with Chin's intuitive conclusion is the contemporaneous e-mail sent by Crescenzi to his supervisor, Bruce Jacobs, on August 6, 2001, attached to Plaintiff's Rule 56.1 Statement, setting forth the strengths and weaknesses of both Parsons and Chin and noting the struggle that Crescenzi had been experiencing in making a decision about who to terminate. Ultimately, Crescenzi noted that "Frank . . . does not have the same respect of his clients. Frank showed he is not able to handle pressure during the Network Separation phase of the transition project . . . In the end, Bill's clients are staying and Frank's clients have been sold to Citi."

Defendant claims Plaintiff has not met his burden because no evidence has been offered that the articulated reason is false or that the real reason for termination was race or national origin discrimination. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Summary judgment cannot be defeated by "relying 'simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere

allegations or denials of the adverse party's pleading.'" *T. Burke v. Gutierrez*, No. 04-CV-7593, 2006 WL 89936, at *5, (S.D.N.Y. Jan. 12, 2006) (quoting *Goenaga*, 51 F.3d at 18). Here, Plaintiff admits he does not know if Defendant is being untruthful and offers no evidence to contradict Defendant's position. Plaintiff bases his case on his opinion that unlawful discrimination can be the ***only*** explanation for his termination.

Even if the position is taken that Defendant's proffered reason was false, the fact remains that there is no evidence to support an inference of discriminatory intent. *See generally Grady*, 130 F.3d at 561. Plaintiff has given no indication of being treated differently due to race or national origin, and has pointed to no statements made by anyone in company regarding his race or national origin. *See id.*; *DeLuca*, 2006 WL 1662611, at *9.

Defendant also points to Plaintiff's deposition where Plaintiff concedes that the decision to terminate him may have been nothing more than a poor business decision. *See* Chin Dep. at 225. The role of the court is to determine whether unlawful discrimination motivated an adverse employment action, not to evaluate whether a business decision was good or bad. *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002); *Gray v. Lutheran Social Services of Metropolitan New York, Inc.*, No. 04-CV-2842, 2006 WL 1982859, at *7 (E.D.N.Y. July 13, 2006) (granting summary judgment where plaintiff disagreed with the elimination of his position, but offered no evidence of discriminatory motivation). Here, Plaintiff has made clear he does not agree with his termination, but has offered no evidence to suggest the elimination of his position was motivated by unlawful discrimination. To the contrary, Chin's admissions during his testimony offer evidence supporting an inference of non-discrimination.

Furthermore, the fact that Crescenzi had approved Plaintiff's hiring of two Chinese employees also supports an inference of non-discrimination suggesting invidious discrimination was unlikely. *See Byrne v. CNA Ins. Co.*, No. 98-CV-885, 2001 U.S. Dist. LEXIS 12975, at *26 (N.D.N.Y. Aug. 29, 2001); *see also Schnabel*, 232 F.3d at 91; *Grady*, 130 F.3d at 560. This proposition reflects the rationale that it is unlikely that the "'same manager who hired a person in the protected class would suddenly develop an aversion to members of that class.'" *Watt v. New York Botanical Garden*, No. 98-CV-1095, 2000 WL 193626, at *7 (S.D.N.Y. Jan 13, 1998) (quoting *Ruane v. Continental Cas. Corp.*, No. 96-CV-7153, 1998 WL 292103, at *8 (S.D.N.Y. June 3, 1998)); *see also Grady*, 130 F.3d at 560. The same manager hiring and firing Plaintiff, further supports an inference of non-discrimination. Additionally, Richards, the other terminated vice president, was Caucasian and non-Chinese -- evidence that "Plaintiff has not attempted to refute or overcome." *Kahn*, 547 F. Supp. at 740.

**D.**   ***Plaintiff's New York State Human Rights Law Claims Should Be Dismissed***

Discrimination claims "under the NYSHRL are analyzed identically to claims under . . . Title VII, " and "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII." *Drummond v. IPC International, Inc.* 400 F.Supp.2d 521, 535-536 (E.D.N.Y. 2005), quoting *Smith v. Xerox Corp.*, 196 F.3d 258, 363 n. 1 (2d Cir. 1999).   A district court "need not explicitly evaluate a plaintiff's NYSHRL claims where it has thoroughly analyzed the plaintiff's Title VII claims." *Drummond*, 400 F.Supp.2d at 536, citing *Smith*, 196 F.3d at 363 n. 1. Here, in light of the fact that Plaintiff has failed to carry his burden with respect to both his age and race or national origin claims, the NYSHRL claims must necessarily fail as well.

## III.    CONCLUSION

Plaintiff has failed to make out a *prima facie* case with respect to his claim of age discrimination.  Further, Plaintiff's *prima facie* case of race or national origin discrimination is weak, the probative value of the employer's articulated legitimate business reason for the discharge is strong, and Plaintiff has not established that the legitimate business reason for his termination is a pretext for discrimination.  While Chin's unhappiness at his termination is understandable, the fact that he personally believes ABN AMRO's only motivation in doing so was his race or national origin is not a sufficient reason to justify submitting this case to a jury. Even taken in the light most favorable to Chin, a factfinder could not reasonably infer that ABN AMRO intentionally discriminated against Chin on the basis of race or national origin.
I therefore recommend that the Defendant's motion for summary judgment be GRANTED and that the Complaint be dismissed in its entirety.


Traditionally, any objection to a Report and Recommendation must be filed with the Clerk of the Court within 10 days of service and failure to file objections within this period waives the right to appeal.  *See* 28 U.S.C. § 636(b)(1)(C)(West 2006); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).   Therefore, the parties are hereby informed that written objections to this Report and Recommendation, if any, must be filed with Judge Irizarry within the prescribed time period.

**SO ORDERED.**

Dated: Central Islip, New York
      September 29, 2006

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge